NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **E.T. BROWNE DRUG CO., INC.** | |
| Plaintiff, | Civil Action No. 03-cv-5442 (PGS) |
| v. | **OPINION** |
| **COCOCARE PRODUCTS, INC.** | |
| Defendant/Counterclaimant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the court on cross-motions for summary judgment. Cococare Products, Inc. (Cococare) seeks dismissal of the complaint based upon the doctrines of genericness and fair use which, if applicable, defeat Browne's alleged trademark in the term "cocoa butter formula." In addition, Browne seeks dismissal of Cococare's counterclaims for punitive damages and other relief based upon fraud and misrepresentation. Cococare also asserts that the doctrine of laches should operate to dismiss the complaint, or alternatively, substantially limit the period of time for which damages may be permitted.

The district court has subject matter jurisdiction over the Lanham Act claims, 15 U.S.C. §§ 1051-1128, pursuant to 28 U.S.C. § 1338(a). *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1060 (3d Cir. 1991). This Court has pendent jurisdiction over the related state statutory and common law claims pursuant to 28 U.S.C. § 1338(b). *Id.*

I.

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact; it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary

judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). If the evidence is "such that a reasonable fact-finder could return a verdict for the nonmoving party," summary judgment should not be granted. *Anderson*, 477 U.S. at 248.

In sum, on a motion for summary judgment the responsibility of the district court is to determine if there are triable issues, rather than to try those issues and make findings based on the affidavits and other materials accompanying the motion. *Country Floors, Inc.*, 930 F.2d at 1062.

To prevail on a claim for trademark infringement under § 32(a) of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must establish that: (1) the mark is valid and legally protectable; (2) the mark is owned by plaintiff; and (3) the defendant's use of the mark to identify goods is likely to create confusion concerning the origin of the goods. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) (citing *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)). This is true under both federal and New Jersey law. *Harlem Wizards Entm't Basketball, Inc. v. NBA Properties, Inc.*, 952 F.Supp. 1084, 1091 (D.N.J. 1997); *See also, Christian Science Board v. Evans*, 105 N.J. 297 (1987). However, where a term is not federally registered, the burden is on the proponent to show non-genericness. *National Conference of Bar Examiners v. Multistate Legal Studies*, 692 F. 2d 478 (7th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983).

II.

Browne is a privately held corporation headquartered in Bergen County, New Jersey, which manufactures skin and hair care products. The family-owned company markets products under the house mark "Palmers®." In the 1970's the company began marketing products containing cocoa butter. The products were packaged in containers which displayed the Palmer's® mark as well as the words "cocoa butter formula" followed by the common law designation "TM." Palmer's line of cocoa butter formula products is the best selling line in the cocoa butter category. Significantly, Browne's term "cocoa butter formula" is registered with the Patent and Trademark Office ("PTO") on the Supplemental Register,[1] as opposed to the Principal Register.

Cococare is a New Jersey corporation with its principal place of business in Dover, New Jersey. Cococare claims it has sold personal care and beauty aid products containing cocoa butter since 1969. In 1994, Cococare introduced new products formulated with cocoa butter and Vitamin E and labeled the products "Cococare cocoa butter formula."

The major difference between the companies is their size. Cococare is a relatively obscure company which has a minuscule advertising budget. In fact, the parties agree that Browne knew of its claims against Cococare since 1993 but did not prosecute them because Cococare sales were "de minimis"; and Browne could only confirm two "sightings"[2] of Cococare from 1994 - 2000. Browne's chief complaint is that it has spent millions to advertise "Palmer's® cocoa butter formula"

---

[1] Supplemental registration of "cocoa butter formula" was filed for on October 11, 2000; "cocoa butter formula" was originally placed Supplemental Register, under registration number 2,464,760, on June 26, 2001.

[2] Use of the term "sightings" by Browne seems to liken Cococare products with an endangered species - rarely seen.

in major media outlets, and Cococare may be squeezing in on those markets at no cost to Cococare.

There is little disagreement about the market in which the companies compete. Browne states the product genus is not in dispute, and describes it as "skin care products in the cocoa butter category" while Cococare says the genus should be described as "personal care and beauty aid products" in the cocoa butter market. At any rate, these lotions and creams are used from cradle to grave, in order to abate such ailments ranging from diaper rash to wrinkles. Cococare's description distinguishing between "personal care" and "skin care" products was ill-explained to the court - - it appears to be a distinction without a difference.

At oral argument, Browne and Cococare agreed that the words "cocoa butter" are generic; but according to Browne, the rub comes when "cocoa butter" is used in combination with "formula." At that point, Browne argues the term "cocoa butter formula" transforms into a descriptive phrase, which Browne alleges has acquired secondary meaning associated with its products, thus deserving of trademark protection.

On the other hand, Cococare advertises its products as "Cococare cocoa butter formula." It does not assert that any of its name is subject to trademark protection. It says it should be permitted to use the term "cocoa butter formula" because the term is generic. The term connotes what the product is, and has no secondary meaning associated with Browne's products. Cococare argues that "Palmers®" is the only word which Browne can rightfully protect.

There are other facts which are not in dispute, and are germain. The formulations of both companies are essentially identical and are not protected by any patent. Browne originally asserted

trade dress[3] claims against Cococare; but reconsidered and has dismissed those claims as well as others concerning a similar dispute over the use of "shea butter formula".

### III.

The name of a product or service - what it is - is the very antithesis of a mark. A generic name of a product can never function as a trademark to indicate origin. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §12:1. Generally, the function of a mark is to identify and distinguish the goods or services of one seller from those sold by others. *Id.* However, "the genericness doctrine prevents trademarks from serving as the substitutes for patents, and protects the public right to copy any non-patented, functional characteristic of a competitor's product." *A.J. Canfield Co. v. Honeckman*, 808 F. 2d 291, 305 (3d Cir. 1986). To grant a trademark to a generic name would be tantamount to granting "the owner of the mark a monopoly, since a competitor could not describe his goods as they are." *CES Publishing Corp. v. St. Regis Publications*, 531 F. 2d 11, 13 (2d Cir. 1975).

### IV.

When a producer introduces a product that differs from an established product class in a significant, functional characteristic, and uses the common descriptive term of that characteristic as its name, that new product becomes its own product category or genus, and the term denoting the genus can be considered generic and thus not protectable. *Canfield*, 808 F.2d at 293. Therefore, whether or not "cocoa butter formula" is generic, turns on how we define the relevant product category or genus. *Id.* at 298 (citing *Park 'N Fly v. Dollcar Park and Fly, Inc.*, 469 U.S. 189, 105

---

[3] Much of Browne's brief focuses on trade dress concerns such as the colors on the product label and the "size, style and color of the container" (Browne's brief at p. 9). Although not at issue, a picture of a Cococare's and a Browne's label is attached.

S.Ct. 658, 661-62 (1985)).

A fundamental question in this case is whether "cocoa butter" or "cocoa butter formula" is the relevant product genus for evaluating genericness. *See, Id.* at 299. the product genus in this action, however, is not in dispute. Browne proffers that prior to the 1970's, there were lotions and creams on the market that contained "small amounts of cocoa butter in them, and the only other choice was a solid 100% cocoa butter stick which had an inconsistent odor, tended to melt in warm weather, and was difficult to apply." (Browne's brief at p. 3). Browne claims that it was Palmer's® chemical ingenuity that spawned the first "commercially viable solid skin care product containing cocoa butter." (Browne's brief at p. 17). Regardless, there is currently a class of commercially viable products, marketed by several competitors in the industry, formulated with cocoa butter. *Id.* at 17. This new class is not part of the pre-1970's genus of products which contained "small amounts of cocoa butter in them" or were a "solid 100% cocoa butter stick." Instead these products are part of this new genus; consisting of personal care and beauty aid products, including creams, lotions, skin moisturizers and soaps, formulated with cocoa butter.

In this case, the genericness of the word "formula" in the term "cocoa butter formula" is obvious. First, the dictionary definition of "formula" is relevant and influential in this instance. *See, Murphy Door Bed Co. v. Interior Sleep Systems*, 874 F. 2d 95, 101 (2d Cir. 1989); *McCarthy on Trademarks* §12.13. According to Stedman's Medical Dictionary, "formula" means: A recipe or prescription containing directions for compounding of a medicinal preparation. Stedman's Medical Dictionary, 490 (22nd ed. 1972). Miriam-Webster concurs and expands on Stedman's definition - "a customary or set form or method allowing little room for originality." Miriam-Webster Dictionary Online, http://m-w.com/dictionary/formula. Browne, Cococare and all of their

competitors mix cocoa butter with other ingredients. As stated above, Browne admits that cocoa butter, without formulation, is not marketable. Since all products are formulated with cocoa butter and other elements, cocoa butter formula is the relevant product class. Identification by the public of the term cocoa butter formula with Browne would prove only the obvious point that Browne has been the major producer of the product, and would not establish trademark status. *See, Canfield*, 808 F.2d at 299.

Comparable cases exist in the Third Circuit. In *Canfield*, the Court of Appeals rejected an infringement claim and affirmed the District Court's denial of a preliminary injunction against the maker of "chocolate fudge" soda. *Canfield*, 808 F.2d at 308. In affirming the decision, the Court found the designation generic, thus unprotectable, and further that the addition of a "common descriptive term of functional characteristic" as the name, created its own, new product genus. *Id.* at 291. In another case, District Judge Walls granted summary judgment dismissing a complaint for trademark infringement and unfair competition over the use of the supplementally registered term "Softchews" to describe chewable, soft, easy-to-take, tablets. *Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.*, 1999 WL 707721, *4-7 (D.N.J. 1999). The *Novartis* Court found Softchews to be like Chocolate Fudge Soda and cited the Third Circuit's ruling approvingly. *See Id.* "Chocolate fudge denotes a flavor" and nothing more. "No imagination is required." *Id.* at 7 (quoting *Canfield*, 808 F.2d at 298). Like softchews and chocolate fudge soda, the same can be said for the term cocoa butter formula.

V.

Browne relies on a consumer survey to refute the genericness of "cocoa butter formula." *See, McCarthy on Trademarks and Unfair Competition* § 12:14. Surveys are usually helpful in determining generic disputes. "The probative value of a consumer survey is a highly fact-specific

determination and a court may place such weight on survey evidence as it deems appropriate." *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 134 (3d Cir. 1994) (quoting *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1272 (S.D.N.Y. 1990)). In this instance, Browne's survey is of little or no probative value. Surveys should relate to the facts of the case. The fact is that Browne has never advertised its products solely as "cocoa butter," or "cocoa butter formula." Browne admits that all of its mass media advertising and its product labels read "Palmer's® cocoa butter formula"; but its survey only tests the words "cocoa butter formula" for secondary meaning. The Court recognizes that to say surveying cocoa butter formula without "Palmer's®" undermines Browne's theory of the case; for the survey to be probative it must be based in fact - the respondents must be presented with the facts as they are in the market. To delete the word "Palmer's®" from the survey questions are flawed and misleading. In addition, some of the survey questions use two of the three words (cocoa butter) of Browne's source identifier (cocoa butter formula). To this court, the questions in Browne's survey are highly suggestive in order to evoke a specific response. For example,

> Q1. *"What word or words would you use to identify or describe a skin care product which contains cocoa butter."* (Underscoring in the original).
>
> Q2. *"If you have an opinion, what other word or words would you use to identify or describe a skin care product which contains cocoa butter?"* (Underscoring in the original).

For the same reasons, leading questions are objectionable on direct testimony at trials, leading questions in a survey, as above, can not be the predicate for truthful survey findings. A survey is

not credible if it relies on leading questions which are "inherently suggestive and invite guessing by those who did not get any clear message at all." *Id.* The Third Circuit has repeatedly affirmed District Court decisions to ignore survey results that "suffered from repetitive and leading questions and no filter mechanism." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 592 (3d Cir. 2002) (citing *Rorer*, 19 F.3d at 135). Accordingly, Browne's genericness survey was not objective because it asked very leading questions and should be afforded little or no weight by this Court. *See, Rorer*, 19 F.3d at 135.

## VI.

As early as 1933, Browne had secured registration on the Principal Register of the name "Palmer's®." In the early thirties, the mark was associated with "medicinal and toilet soap." As the decades progressed, Browne registered more and more health and beauty products under the "Palmer's®" mark. In late 1999, Browne attempted to register the mark "Palmer's cocoa butter formula" with the trademark office. However, the reviewer rejected same by concluding "cocoa butter formula" "is merely descriptive because it is a significant ingredient in the applicant's goods and its form within them." As a result, Browne was religated to register "Palmer's® cocoa butter formula" with a disclaimer as to the distinctiveness of "cocoa butter formula" and subsequently listing "cocoa butter formula" on the Supplemental Register.

The fact that plaintiff's term "cocoa butter formula" is registered on the Supplemental Registration rather than the Principal Register has definitive legal significance. *Novartis*, 1999 WL 707721 at *4. Registration of a mark on the Principal Register is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in

connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." 15 U.S.C. § 1057(b). However, registration of a mark on the Supplemental Register as is the case here is not afforded this statutory presumption. "Registration on the supplemental register shall not be subject to or receive the advantages of" those registered on the Principal Register. 15 U.S.C. § 1094. Unlike Principal Registration, "Supplemental Registration creates no substantive rights." *Novartis*, 1999 WL 707721 at *4 (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:37 at 19-75 (4th ed. 1998)).[4]

Eligibility for registration on the Supplemental Register pursuant to 15 U.S.C. § 1091, requires that the term does not meet the requirements of registration on the Principal Register[5] but is deemed capable of achieving an association with the source of the product. *Id.* at *5 (citing *In re Bush Brothers & Co.*, 884 F.2d 569 (Fed.Cir. 1989)). One commentator has noted that there is nothing in the Lanham Act "to preclude Supplemental Registration from being deemed an admission against interest that the term in not inherently distinctive." *Id.* (citing 3 McCarthy, *supra*, § 19:35 at 19-73.) The "very presence [of a mark] on the Supplemental Register indicates a preliminary determination that the mark is **not** distinctive of the applicant's goods." *Id.* **[emphasis added]** (citing 3 McCarthy, *supra*, § 19:35 at 19-75.)

In arguing that the mark has distinctiveness, Browne asks the Court to recognize that the simple addition of the word "formula" to "cocoa butter" is some how descriptive. Browne's attempt

---

[4] Supplemental Registration allows for questions of validity, ownership and infringement to be governed by federal law.

[5] Principal Registration requires that a mark be a trademark used (or there is a bona fide intention to use it) in interstate commerce, "to identify and distinguish ....goods....from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

11

at creating descriptiveness and secondary meaning is futile at best. "If we hold a mark descriptive, a claimant can still establish trademark rights, but only if it proves that consumers identify the term with the claimant, for that identification proves secondary meaning." *Canfield*, 808 F.2d at 297 (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978)). In this circuit, if a term has not been federally registered and is not inherently distinctive, validity usually depends on proof of secondary meaning. *Fisons*, 30 F.3d at 472; *Canfield*, 808 F. 2d at 292. Such factors may include the extent of sales and advertising leading to buyer association, length of use, exclusivity of use, the fact of copying customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers, and actual confusion. *Ford*, 930 F. 2d at 292. In this case are other controlling factors which taken as a whole show that cocoa butter formula is generic. The factors are: (1) the decision by the PTO to disclaim protection to the words "cocoa butter formula"; (2) the plain meaning of "formula" merely describes what the product is, and the term is not in any way descriptive; and (3) the flaws within Browne's consumer survey undermine its probative value. As such, Cococare's motion for summary judgment declaring the term "cocoa butter formula" generic is granted. In summary, both parties may use the generic term "cocoa butter formula" in the marketplace without restriction or concern, as has been done for at least ten years.

VII.

Browne moves for summary judgment to dismiss Cococare's counterclaims. Cococare alleges Browne made deliberately fraudulent statements to the Patent and Trademark Office, and as a result, punitive damages should be awarded. Cococare's counterclaims raise a multitude of unsubstantiated allegations. A review of the record suggests that there is no substantive evidence

that Browne made any willful or fraudulent misrepresentations to the PTO with regards to "Palmer's® cocoa butter formula" that would warrant an award of punitive damages. Moreover, Cococare admittedly has suffered no actual damages as a result of Browne's alleged actions. Cococare marketed its product for years using the term "cocoa butter formula" without any adverse impact. Thus, the Court need not award any of the relief sought by Cococare[6] except for summary judgment. Clearly "Palmer's®" is arbitrary or fanciful, the highest level of distinctiveness, and thus capable of trademark protection with other words to identify a product made by Browne, as evidence by the PTO's principal registration of many "Palmer's®" products. As explained above, supplemental registration provides no substantive rights, so there would be no reason to force the cancellation of a supplementally registered mark. Finally, the PTO has already commented on the lack of distinctiveness of "cocoa butter formula" and this Court fails to see what, if anything, has changed since that determination. For the reasons stated above, Cococare's counterclaims are dismissed.

September 18, 2006

PETER G. SHERIDAN, U.S.D.J.

---

[6]Cococare seeks: (1) Punitive damages; (2) Cancellation or amendment of the principal registration of "Palmer's® cocoa butter formula"; (3) cancellation of the supplemental registration of "cocoa butter formula"; and (4) abandonment of the pending PTO application.